UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-10-FDW
(3:15-cr-179-FDW-DCK-2)

| | | |
|---|---|---|
| JACOB IVAN HILL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or

Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.    BACKGROUND[1]

Petitioner and his co-defendant, Carlos Benson, were charged with: Count (1), Hobbs Act

robbery (18 U.S.C. §§ 1951, 2); Count (2), kidnapping conspiracy (18 U.S.C. § 1201(c)); Count

(3), kidnapping (18 U.S.C. §§ 1201(a)(1), 2); Count (4), carjacking (18 U.S.C. §§ 2119(3), 2);

Count (5), conspiracy to possess with intent to distribute cocaine (21 U.S.C. § 846); Count (6),

possession with intent to distribute cocaine (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2); Count (7), use,

carry, and possession of a firearm during and in relation to a crime of violence or drug trafficking

crime, i.e., Counts (1) through (6) (18 U.S.C. §§ 924(c), 2); and Count (8), causing death in the

course of using, carrying, and possessing a firearm during and in relation to a crime of violence or

drug trafficking crime, *i.e.,* Counts (1) through (6) (18 U.S.C. §§ 924(j) and 2); and Count (10),

---

[1] This section is not exhaustive. Additional information is included in the Discussion section as relevant to the various claims.

1

possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)).  (3:15-cr-179 (CR), Doc. No. 1).

At trial, the Government presented evidence that Benson and Petitioner lured Quinton Patterson into a sham drug deal that ultimately led to the death of Darrell Hames:

> On November 12, 2014, Hill arranged to buy two grams of cocaine from Patterson. When Patterson arrived to meet Hill, he parked his Impala and got into the passenger's seat of Hill's Escalade. He put the cocaine on the center console, but Hill told Patterson that he "want[ed] it all." At that point, Benson jumped up from the back seat, where he had been hiding, and put a gun to the back of Patterson's head.

> Hill ordered Patterson to reveal the name of his dealer. When Patterson hesitated, Hill pulled out his gun and pointed it at Patterson, saying he was "not playing." Patterson relented, and Hill used Patterson's phone to call the dealer, Darrell Hames, ostensibly to buy three ounces of cocaine. Hames, believing he was talking to Patterson, said to meet at the spot where they normally did their transactions.

> Once he hung up, Hill asked, "Where's the spot? Where's the spot?" Patterson didn't answer and was forced out of the car. Hill warned that he was "going to shoot" Patterson if he "tr[ied] anything." Patterson returned to his Impala and Benson got in the front passenger's seat, still pointing his gun at Patterson. Patterson drove to the spot and Hill followed behind in his Escalade.

> When they arrived, Hill parked a short distance away and walked to a line of trees out of sight. Benson hid in the back seat of the Impala, still pointing his gun at Patterson.

> Hames arrived a few minutes later. He got into the passenger seat of Patterson's Impala and placed a bag of cocaine on the center console. At that point, Benson sat up and pointed his gun at Hames, saying "Don't you fuck—don't you flinch." Benson also said he "ain't playing."  Hames (who was also armed) turned around and reached for his gun. Benson then shot Hames six times, and Hames shot Benson three times. Patterson got out of the car and fled.

> Benson and Hill were later apprehended by the police. When emergency personnel arrived at the scene, they were unable to revive Hames and pronounced him dead.

United States v. Benson, 756 F. App'x 258, 260 (4th Cir. 2018) (citations omitted).

The jury found Petitioner guilty of all the counts and made special findings:

As to Count Three … did death result from the commission of this offense: YES
…
As to Count Four … did death result from the commission of this offense: YES
…
As to Count Seven …

   Was the firearm possessed in furtherance of:
       Drug Trafficking Crime? YES
       Robbery: YES
       Kidnapping? YES
       Carjacking? YES

   Was the firearm used or carried during or in relation to:
       Drug Trafficking Crime? YES
       Robbery: YES
       Kidnapping? YES
       Carjacking? YES

   Was the firearm brandished? YES

   Was the firearm discharged? NO

(CR Doc. No. 92 at 2).

The Court sentenced Petitioner to concurrent terms of life in prison for Counts (2), (3), (4), (8), and (10); 240 months' imprisonment for Counts (1), (5), and (6), concurrent; and 84 months for Count (7), consecutive, for a total of life plus 84 months' imprisonment. (CR Doc. No. 125).

On direct appeal, Petitioner argued: there was insufficient evidence of intent to support the carjacking conviction; the Court erred by failing to declare a mistrial where the jury was exposed to a prejudicial photograph that was never properly admitted; the Court erred by imposing sentences beyond the statutory maximum for the felon-in-possession charge; and the firearm convictions under §§ 924(c) and 924(j) violate the double jeopardy. The Fourth Circuit affirmed. It found that there was sufficient evidence of intent to support the carjacking conviction; the Court did not abuse its discretion in denying the motion for a mistrial; the imposition of a life sentence for the § 922(g)(1) violation was plain error but that Petitioner was not entitled to relief because

3

he was properly sentenced to life in prison on other counts; and no double jeopardy violation resulted from the convictions for violating §§ 924(c) and 924(j) convictions because the convictions addressed separate underlying conduct. Benson, 756 F. App'x at 258.

Petitioner filed the instant § 2255 Motion to Vacate on December 18, 2019.[2] He raises numerous claims of ineffective assistance of trial and appellate counsel. He asks the Court to vacate the Judgment and grant him a new trial.

The Government filed a Response, (Doc. No. 4), arguing that the Motion to Vacate should be dismissed and denied because Petitioner seeks to relitigate some of the claims he raised on direct appeal under the guise of ineffective assistance of counsel; he seeks to revisit some of the Court's evidentiary rulings; the record establishes that trial and appellate counsels' performance was within the wide range of reasonable assistance; and Petitioner cannot establish prejudice in light of the overwhelming evidence of his guilt and properly-imposed life sentence.

In his Reply, (Doc. No. 8), Petitioner argues that the Government mischaracterized and failed to respond to some of his arguments; he asserts that his claims are meritorious. He further asserts that he would have pleaded guilty had he known that he was facing a mandatory life sentence. (Doc. No. 8 at 12).

Petitioner also filed a *pro se* Letter, (Doc. No. 6) seeking the Court's recusal in these § 2255 proceedings. The Court construed the Letter as a Motion to Recuse and denied the Motion because Petitioner failed to satisfy 28 U.S.C. § 144. (Doc. No. 7). Petitioner has now filed a "Reply" (Doc. No. 9) in which he appears to seek relief pursuant to 28 U.S.C. § 455. Under § 455, a justice, judge, or magistrate judge must disqualify himself in any proceeding in which his

---

[2] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule); Rule 3(d), Rules Governing § 2255 Proceedings in the United States District Courts (addressing inmate filings).

4

impartiality might be reasonably questioned. No such circumstances are present in the instant case so, to the extent that Petitioner seeks the Court's disqualification pursuant to § 455, such relief is denied.

## II.     SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.     DISCUSSION[3]

## (1)     Claims of Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel was ineffective for: (A) failing to correctly inform Petitioner about his sentencing exposure; (B) failing to adequately argue that self-defense applies

---

[3] Petitioner's claims have been restated and renumbered. Any arguments or sub-claims not specifically addressed in this Order have been considered and rejected.

Case 3:20-cv-00010-FDW   Document 10   Filed 12/11/20   Page 5 of 29

to § 924(c) offenses; (C) failing to have all jurors polled about their exposure to an unadmitted photograph and failing to insist that Juror Six be replaced with an alternate; (D) misadvising Petitioner that he would spend life in prison if he testified at trial; (E) failing to object to improper closing arguments that amounted to prosecutorial misconduct; (F) at sentencing, failing to object to a sentence beyond the statutory maximum and to a double jeopardy violation; and (G) failing to file a motion for new trial at Petitioner's request.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

### (A)    Plea Negotiations

Petitioner argues that counsel was ineffective for failing to inform Petitioner that he was facing a *mandatory* life sentence, which hindered Petitioner's ability to intelligently decide whether to plead guilty. He further contends that counsel falsely stated at the sentencing hearing that Petitioner had been correctly advised of his sentencing exposure. Petitioner states in his Reply that he "obviously would have taken a plea had [he] known that [he] was facing a mandatory life sentence." (Doc. No. 8 at 12).

6

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). As a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Frye, 566 U.S. at 145. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Id. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

At the sentencing hearing, both of Petitioner's lawyers stated that they had told Petitioner, at all times, that he was facing a mandatory life sentence. (CR Doc. No. 172 at 27-28). The following discussion then transpired regarding Petitioner's knowledge of his sentencing exposure prior to trial and the parties' plea discussions:

> THE COURT: … **Mr. Hill, did you understand that if you were convicted of certain counts with certain specific findings of facts by the jury that you could have been facing, as you are today, mandatory life?**
>
> THE DEFENDANT: **I knew that life was a possibility**.
>
> THE COURT: Okay.
>
> THE DEFENDANT: **Mandatory life, I don't remember**.

THE COURT: All right. But you knew – you knew conviction of some or more – of some or more of the counts plus these specific enhancements by the jury could result in life imprisonment?

THE DEFENDANT: Yes.

THE COURT: **And you consciously made the decision to go forward with the trial. You made that decision?**

THE DEFENDANT: **Yes, I knew that was a possibility**.

MR. CULLER: Well, may I add one thing, Your Honor, which is important for the Court to know? **There was not a plea offer made to the defendant other than plead to life**. And – and obviously for the obvious reasons you're stating. And so it was a no-brainer to go to trial, basically. It was why not? If you know what I'm saying.

THE COURT: Right. Of course.

MR. CULLER: If you don't have a plea offer, there's nothing to gain.

THE COURT: If the worse you can do is –

MR. CULLER: The worse.

THE COURT: You knew the 924(c) was going to be a consecutive sentence if convicted of that. And you knew that.

MR. CULLER: Yes, sir.

THE COURT: And you knew that the other counts were life, and the best deal you're going to get was life, then you're right. What's – why – what's the difference? Go to trial and see if you can convince – the Government can still prove its case by sufficient evidence.

MR. CULLER: Yes, sir.

THE COURT: And prudent advice, I think a logical, reasonable conclusion by the defendant to go forward with trial.

MR. CULLER: Yes, sir. I want the Court to be aware of that.

THE COURT: Right.

MR. CULLER: Because obviously if he had been offered a plea for 10 years or 20 years and we had said no, you need to go to trial and has not told him it's mandatory life, that would be a whole different ballgame. I just want to make sure that was not the situation in this case. If the Government has any objection to what I've represented, please state so now.

> MR. BHASKER: All I'll say on the record, Your Honor, I'm not going to go into plea negotiations, but **there was discussion of this defendant testifying against Mr. Benson. He chose not to do that. Therefore, we didn't entertain any further plea negotiations**….

(CR Doc. No. 172 at 28-30) (emphasis added).

Petitioner's present self-serving contentions that counsel never told him that he faced a mandatory life sentence at trial fails to overcome his own statements and defense counsel's statements to the contrary in open court. See generally Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Even if counsel had failed to inform Petitioner of his mandatory life sentencing exposure, Petitioner has failed to demonstrate prejudice. The record reflects that the Government only plea offer was to life imprisonment and, because Petitioner was unwilling to testify against his co-defendant, the parties did not engage in further discussions. Further, Petitioner has not come forward with any evidence that a more favorable plea offer was forthcoming from the prosecution or would have been acceptable to the Court. See generally Frye, 566 U.S. at 147; United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Petitioner's claim that counsel's alleged misadvice deprived him of a more favorable outcome will, therefore, be denied.

**(B)    Self-Defense**

9

Petitioner argues that counsel failed to adequately argue the legal availability of self-defense to a § 924(c) charge, which resulted in the Court granting the Government's motion in limine and precluded a self-defense theory at trial.

Generally, a criminal defendant is entitled to an instruction as to any defense so long as the instruction has an evidentiary foundation and accurately states the law. See Mathews v. United States, 485 U.S. 58, 63 (1988); United States v. Ricks, 882 F.2d 885, 893 (4th Cir. 1989). The Fourth Circuit has unequivocally held, as a matter of law, that "self-defense is irrelevant to a section 924(c) violation." United States v. Sloley, 19 F.3d 149, 153 (4th Cir. 1994) (quotations omitted).

The Government filed a pretrial motion arguing that the Court should preclude any argument or statement of self-defense about any of the main charges because self-defense is inapplicable to a § 924(c) violation and to felony murder, kidnapping, robbery and kidnapping. (CR Doc. No. 48). It argued that the only charge for which a justification defense was theoretically available is the § 922(g) offense charged in Count (10), and that Petitioner should be required to demonstrate its applicability to the Court before presenting such a theory to the jury. (Id.). Defense counsel agreed at the pretrial hearing that self-defense does not apply to § 924(c) offenses, but argued that the defense should applies to the § 922(g) charge, and that there is no underlying crime of violence to support the § 924(c) charge. See (CR Doc. No. 162 at 2-7). The Government argued that self-defense would become irrelevant with regards to the § 924(c) charge should the jury find no crime of violence or drug trafficking crime. (CR Doc. No. 162 at 8-9). The Court granted the motion in limine with regards to the § 924(c) charge, reserved ruling on the § 922(g) charge subject to the defense's presentation of evidence of a justification defense to the Court before presenting it to the jury, and granted the motion with regards to the other counts subject to reconsideration

10

should facts unfold at trial suggesting that self-defense would be legally appropriate. (CR Doc. No. 162 at 9).

Counsel did not perform deficiently by conceding that self-defense does not legally apply to a § 924(c) violation pursuant to binding Fourth Circuit precedent. <u>Sloley</u>, 19 F.3d at 153. Nor has Petitioner come forward with any evidence that would have supported a justification defense for the § 922(g) charge or for any of the other charges. Counsel cannot be deemed ineffective for failing to present evidence or obtain an instruction on a legally inapplicable self-defense theory and this claim will be denied.

**(C)     Unadmitted Photograph**

Petitioner contends that counsel was ineffective for failing to insist that Juror Six be replaced with an alternate after the jury panel was inadvertently shown an unadmitted photograph of the decedent, which caused that juror to become emotionally upset. Petitioner further argues that counsel was ineffective for failing to have the rest of the jurors polled about the unadmitted photograph.

The Sixth Amendment guarantees a criminal defendant the right to a trial "by an impartial jury." U.S. CONST. Amend. VI. That right is compromised when the trier of fact is unable to render a disinterested, objective judgment. <u>See</u> <u>United States v. Thompson</u>, 744 F.2d 1065, 1068 (4th Cir. 1984). When a serious, non-speculative question of juror impartiality arises during trial, the district court must determine whether the affected jurors remain fair and impartial. <u>Id.</u>; <u>Neal v. United States</u>, 22 F.2d 52, 53 (4th Cir. 1927). A trial judge is authorized to impanel alternate jurors and substitute them for jurors who can no longer serve. Fed. R. Cr. P. 24(c).

During trial, a photograph of the deceased victim was inadvertently flashed on the courtroom display screens for, at most, two seconds. (CR Doc. No. 165 at 54-55). Petitioner's

counsel moved for a mistrial due to the photograph's prejudicial nature. (CR Doc. No. 165 at 56). The Court denied the motion for mistrial because the photograph was not unduly prejudicial and could have been admitted at trial. (CR Doc. No. 165 at 64). The Court then instructed the jury to disregard the photograph as follows:

> THE COURT: So, ladies and gentlemen, for an instant an exhibit, photograph exhibit was displayed on your screens and on the screen above you and was then removed because it had not been admitted.
>
> Did any of you see that?
>
> THE JURY: Yes.
>
> THE COURT: Raise your hand. So most of you did see it. Okay. So that has not been admitted. Please do not consider it in any manner, shape, or form.
>
> Also, to the extent you think it's an emotional exhibit, please don't – just consider the fact that this is supposed to be an impartial and fair forum so the defendants have an honest verdict, a verdict based on admissible evidence and not emotional evidence. So please disregard that photograph. Particularly, if it in any way emotionally affects you, but it is not evidence at this time. I can always say it might become evidence, but it is not evidence now, **disregard it in its entirety**.
>
> **All of you can do that? Please affirmatively nod your heads. And I see every one nodding your head affirmatively**. That you very much….

(CR Doc. No. 165 at 66-67) (emphasis added).

Approximately two hours later, Juror 6 submitted a note informing the Court as follows:

> I am having trouble focusing on the case since the accidental unexpected photo of a gunshot to the head. The reason is my son's best fried at the age of 16 committed suicide by a gunshot to the head…. I was emotionally disturbed and continue to be. I do not feel this will affect my ability to rule this case fairly. My concern is that I may miss important key facts by being disturbed and unable to – [illegible]. I wanted to disclose this to be fair. I'm sorry….

(CR Doc. No. 165 at 167).

The Court called Juror 6 to the courtroom and questioned her about the incident. The juror stated that she was shocked and "a little distracted" after the photograph was flashed, but that she "just kind of needed a break" and could be fair. (CR Doc. No. 165 at 171). Following the colloquy,

all parties indicated that they did not want to replace Juror 6 because there was only one alternate and replacing Juror 6 may risk a mistrial. (CR Doc. No. 169 at 6-7). The Court agreed that the juror's replacement was not necessary and declined to replace her in accordance with the parties' wishes.

Counsel's decision not to seek the replacement of a juror who remained fair and impartial was a reasonable strategic decision. Reasonable counsel could have determined, under these circumstances, that replacing Juror 6 with an alternate would unnecessarily risk a mistrial. Nor has Petitioner demonstrated prejudice. Petitioner contends that the incident caused Juror 6 to entirely miss two hours of trial and rendered her incompetent. The record reveals, however, that Juror 6 experienced only "a little" distraction for the two hours following the incident and could remain fair.

Nor was counsel ineffective for failing to ask the Court to poll the other jurors to see if they were similarly affected by the unadmitted photograph. The Court instructed the jury to disregard the unadmitted photograph entirely and all of the jurors indicated they could do so. The jurors are presumed to have understood and followed the Court's instruction. United States v. Zelaya, 908 F.3d 920, 930 (4th Cir. 2018). Reasonable counsel could have determined that further questioning the jurors about the incident would have called unnecessary attention to the matter. Further, Petitioner has failed to demonstrate how the jury's brief exposure to an unadmitted photograph that was very similar to an admitted photograph and which the jury was instructed to disregard, prejudiced him in any way.

Petitioner has failed to demonstrate that counsel was ineffective with for failing to request that Juror 6 be replaced or that the entire panel be polled and, accordingly, this claim will be denied.

**(D)    Right to Testify**

Petitioner contends that counsel misadvised him that he would spend life in prison if he testified at trial, which scared him into waiving his right to testify and he received a life sentence anyway.

A criminal defendant has a fundamental constitutional right to testify on his own behalf at trial. Rock v. Arkansas, 483 U.S. 44, 52–53 (1987); United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003). A defendant's waiver of this right, like that of any other constitutional right, is "personal" and must be made voluntarily and knowingly.  Sexton v. French, 163 F.3d 874, 881 (4th Cir. 1998); Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir.1997).

The Court instructed Petitioner as follows with regard to his right to testify at trial:

THE COURT: … Mr. Benson and Mr. Hill, we're now to the phase of the trial where you and your attorneys have the opportunity to present evidence.

As part of the evidence of production process, **you have the opportunity to testify if you'd like.** However, you also have a fundamental right under our Constitution, our Bill of Rights, to remain silent if you do not want to testify. And if you choose to remain silent and not testify, I will advise the jurors that they cannot hold it against you in any way that you choose to remain silent.

Now, in exercising your Fifth Amendment right, that's what it's called, Fifth Amendment right to remain silent – while you can remain silent and it will not be used against you, you are foregoing your opportunity to tell your side of the story because that's what you would do on the witness stand. You would tell your side and allow your attorneys to argue your side in closing, and you have the choice to make whether you're going to testify or not.

But let me advise you that if you do choose to testify and tell your side of the story, the Government can do something which it could not otherwise do if you remain silent.  It can – one, it can cross-examine you as to your presentation of your side of the story. And it can also impeach you with regard to certain things you might have done in the past. There's some limitations on drilling into your criminal history because of the stipulation….

(CR Doc. No. 167 at 113-14) (emphasis added).

After discussing the matter with counsel during a break, Petitioner stated his decision not to testify:

THE COURT: … Mr. Hill, during the lunch break, did you have an opportunity to talk to your attorneys about this issue of whether you remain silent or testify?

DEFENDANT HILL: Yes, sir.

THE COURT: And did they provide to you their advice on this issue?

DEFENDANT HILL: Yes, sir.

THE COURT: And did you serious consider their advice?

DEFENDANT HILL: Yes, sir.

THE COURT: **Now, do you have any questions regarding this issue as I explained it to you before the lunch hour?**

DEFENDANT HILL: **No, sir**.

THE COURT: **You understand it?**

DEFENDANT HILL: **Yes.**

THE COURT: Now I ask you what is your decision, to testify or remain silent?

DEFENDANT HILL; At the moment I'm still considering.

MR. CULLER: I'm going to tell you to remain silent at this time. You may choose to testify, depending. You can say it that way.

DEFENDANT HILL: **I choose to remain silent for the moment**.

THE COURT: Right.

DEFENDANT HILL: But I may still –

THE COURT: But you may change your mind?

DEFENDANT HILL: Yes.

THE COURT: At this point in time you're choosing to remain silent, and you can certainly change your mind all the way up until you're called – the time you're called to testify if you choose to testify. **This decision is your personal decision with advice of counsel, but it is your special position, correct**?

DEFENDANT HILL: **Yes, sir**.

(CR Doc. No. 167 at 118-20) (emphasis added).

At the sentencing hearing, Petitioner again stated that he chose not to testify at trial and

explained the reasoning behind that decision as follows:

DEFENDANT HILL: … **I pretty much thought that the evidence when it came out was going to speak for itself.  So I chose not to testify**, and I guess the reason I say that is because I heard you comment a lot about the evidence being overwhelming, and my lawyers, they cost me again. Sorry they cost me concerning things because they got more experience than me and know how these things go.
…

> **I didn't speak at the trial because, like I said, I didn't really want to get caught up in the whole – no disrespect, but circus of this**.
…

> But I kept hearing you, the facts, the evidence. I don't know what evidence you seen that we didn't see that's so overwhelming and that backs the story that Quinton said on the stand and, you know, whenever he get caught in a lie, I can't remember, I can't remember. I don't know what part of that was so full of this evidence, and I don't mean to be disrespectful, but I sat through the trial and I didn't say nothing. **I chose not to testify**.

(CR Doc. No. 172 at 54, 58, 60-61) (emphasis added).

The record reveals that Petitioner understood his right to testify, discussed it with counsel, and personally decided to waive that right. His present self-serving and unsupported contention that he made that decision based on counsel's threat that it would result in life imprisonment is rejected. See Blackledge, 431 U.S. at 74; see, e.g., Lemaster, 403 F.3d at 221–22.

**(E)    Prosecutorial Misconduct**

Petitioner contends that counsel was ineffective for failing to object to statements during closing argument that amounted to prosecutorial misconduct which deprived him of a fair trial.

The test for prosecutorial misconduct in the context of closing argument is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). Specifically, the defendant alleging prosecutorial misconduct must show: "(1) the prosecutor's remarks or conduct were improper and (2) that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Caro, 597 F.3d 608, 624 (4th Cir. 2010).

16

Petitioner argues that the prosecution made improper closing arguments that disparaged the defense, misrepresented the evidence, vouched for prosecution witnesses, conveyed the prosecutor's personal feelings, and shifted the burden of proof. For instance, Petitioner complains that the prosecutor repeatedly urged the jury to reject the "Cookie Monster" and "revenge fantasy" defenses, argued that Patterson's and Miller's testimony was credible and that Benson's testimony was incredible, and argued that the evidence revealed a drug robbery. Read in context, these comments were a fair response to the evidence presented at trial, the defense theory of the case, and defense counsel's closing arguments. Any variations between the evidence presented at trial and the prosecutors' arguments were minor and non-prejudicial. Rather than conveying the prosecutors' personal beliefs, vouching for the Government witnesses, or shifting the burden of proof, the prosecutors' arguments urged the jury to find the Government witnesses credible, reject the defense theory, and return guilty verdicts. Further, to the extent that any of these comments exceeded the bounds of propriety, they were harmless because the comments were brief, there was ample evidence to support Petitioner's conviction, and the defense theory was implausible. See United States v. Scheetz, 293 F.3d 175, 186 (4th Cir. 2002) ("Most importantly, absent the prosecutor's improper remark, the government's case against [the defendant] was overwhelming."); United States v. Craddock, 364 F. App'x 842 (4th Cir. 2010) (prosecutor's comments that witnesses "told the truth" was improper vouching but did not affect defendant's substantial rights so as to require reversal; the comments were isolated, brief, not deliberately placed before the jury to divert their attention to extraneous matters, merely reflected a poor choice of phrasing, and there was ample evidence to support defendant's conviction); United States v. Mason, 344 F. App'x 851 (4th Cir. 2009) (comments vouching for witnesses and referring to facts not in evidence was not plain error given the strength of the government's case and the fact that

those witnesses were mostly redundant, and jury was instructed to rely on its recollection of the evidence); United States v. Lawson, 64 F. App'x 380 (4ᵗʰ Cir. 2003) (assuming that the prosecutor made vouching remarks, they were not plain error given their isolated nature and the overall strength of the government's case). Further, these comments occurred during closing arguments and the Court provided instructions, that the jury is presumed to have followed, that counsel's arguments are not evidence and that the burden of proof rests on the Government. See (CR Doc. No. 164 at 13-15) (preliminary instructions); (CR Doc. No. 170 at 88) (concluding instructions); see Jones v. United States, 527 U.S. 373, 394 (1999) (jurors are presumed to follow the jury instructions).

Petitioner's claim that counsel was ineffective for failing to object to the allegedly improper closing arguments is refuted by the record insofar as counsel did raise several objections during the prosecution's closing arguments. See (CR Doc. No. 169 at 210); (CR Doc. No. 170 at 51, 62). Reasonable counsel could have concluded that additional or different objections would have been fruitless. Further, Petitioner has failed to demonstrate a reasonable probability that a different outcome would have resulted had counsel made additional objections in light of the strong evidence of Petitioner's guilt and the implausibility of the defense theory.

Therefore, Petitioner's claims that counsel was ineffective with regards to prosecutorial misconduct that allegedly occurred during closing arguments will be denied.

**(F)     Sentencing**

Petitioner contends that counsel was ineffective for failing to object when the Court imposed a life sentence for the § 922(g) offense that exceeded the statutory maximum, and for failing to object that the convictions and sentences for violations of §§ 924(c) and (j) violated double jeopardy.  In his Reply, Petitioner concedes that he "ha[s] no choice but to admit that the

Government was correct in its assessment that d[ue] to other counts, there was no real relief to be gained from the resulting prejudice." (Doc. No. 8 at 20). These claims will accordingly be denied.[4]

### (G) Motion for New Trial

Petitioner contends that counsel was ineffective for failing to file a Rule 33 motion for new trial pursuant to his request, that counsel told Petitioner that the motion had been struck down, and that Petitioner later learned that no motion had been filed. In his Reply, Petitioner admits that he did not know the issue that was supposed to be raised in the motion for new trial. (Doc. No. 8 at 20).

This claim is facially insufficient to support relief. Petitioner has failed to set forth the claims that reasonable counsel would have raised or explain why they had a reasonable probability of changing the outcome of the proceeding.[5] This claim will, therefore, be denied.

### (2) Claims of Ineffective Assistance of Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to raise the following issues on direct appeal (renumbered): (A) the Court's ruling that self-defense was inapplicable; (B) prosecutorial misconduct; (C) denial of judgment of acquittal on carjacking; (D) the Court's bias against the defense; (E) the fundamentally inconsistent verdict; and (F) cumulative errors deprived Petitioner of a fair trial.

The right to the effective assistance of counsel extends to direct appeal. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate

---

[4] Had these claims not been withdrawn, they would have been denied for the reasons set forth in the Government's Response. (Doc. No. 4 at 30-31).

[5] The Government correctly notes that the claim mentioned in counsel's motions to extend the time to file a motion for new trial fails to support an ineffective assistance claim because it was denied on the merits at the sentencing hearing. See (Doc. No. 4 at 31-32).

19

both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." Smith v. Murray, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." United States v. Allmendinger, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. Smith v. Robbins, 528 U.S. 259, 285–86 (2000); see also United States v. Mannino, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under Strickland is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

    **(A)    Self-Defense**

    Petitioner contends that appellate counsel should have argued that the Court abused its discretion by misapplying Sloley and finding that self-defense is irrelevant to the § 924(c) offense where no kidnaping, carjacking or robbery conspiracy occurred and Petitioner was merely present at the scene.

    The Court correctly applied Sloley and no error occurred with regards to the availability of a self-defense theory as set forth in Claim (1)(B), *supra*. Because "[t]he underlying arguments are

meritless … it could scarcely be ineffective of appellate counsel not to raise them." <u>Coley v. Bagley</u>, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."); <u>see</u> <u>Schneider v. United States</u>, 864 F.3d 518 (7th Cir. 2017) (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless).

### (B)  Prosecutorial Misconduct

Petitioner contends that appellate counsel was ineffective for failing to raise the "blatant" and extensive prosecutorial misconduct that occurred during closing arguments. No prejudicial prosecutorial misconduct occurred as set forth in Claim (1)(E), *supra*, and appellate counsel cannot be deemed for failing to raise this meritless argument on direct appeal. <u>See</u> <u>Coley</u>, 706 F.3d at 752.

### (C)  Judgment of Acquittal

Petitioner argues that appellate counsel was ineffective for failing to adequately argue that the Court erred by denying judgment of acquittal on the carjacking charge. Petitioner contends that counsel argued a "regular § 2119 instead of a § 2119(3)" that requires proof of an additional element. (Doc. No. 1 at 54). He appears to argue that there is an inadequate nexus between the taking of Patterson's vehicle and Hames' shooting death during the subsequent drug robbery.

To obtain a conviction under § 2119(1), the government must prove that the defendant "(1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation." <u>United States v. Foster</u>, 507 F.3d 233, 246 (4th Cir. 2007) (internal quotation marks omitted). Section 2119(3) requires the additional element that "death result[ed]" from the defendant's taking or attempted taking of the vehicle. 18 U.S.C. § 2119(3). To satisfy this element, the government need only prove conditional intent, *i.e.*, that the

Case 3:20-cv-00010-FDW   Document 10   Filed 12/11/20   Page 21 of 29

defendant was willing to kill or harm the driver if the driver did not comply with the demand to turn over the car. Holloway v. United States, 526 U.S. 1 (1999). The government does not have to prove that the death occurred during the actual carjacking. "It's sufficient if the government proves the defendant caused the death … at any time during the carjacking or the defendant's retention of the vehicle." United States v. Blake, 571 F.3d 331, 352 (4th Cir. 2009).

Counsel argued on direct appeal that the Court erred by denying their motion for judgment of acquittal on the carjacking charge because there was insufficient evidence that they were prepared to kill or seriously injure Patterson, which would have defeated their overall plan to force Patterson to take them to "the spot" where he was going to meet up with Hames. See Benson, 756 F. App'x at 262. The Fourth Circuit denied this claim because, even if a reasonable juror could draw the conclusion urged by the defense, "a reasonable juror could also conclude that the defendants' threats were all too real" and that "Benson and Hill were prepared to kill or seriously injure Patterson if necessary." Id. at 263. The evidence also established that Defendants forced Patterson to drive his carjacked vehicle to meet Hames while Benson remained in the vehicle and shot Hames to death during the botched drug rip-off. This evidence was sufficient to support the jury's finding, beyond a reasonable doubt, that "death resulted" from actions that occurred while Defendants retained the carjacked vehicle. (CR Doc. No. 92 at 2) (the verdict form for Count (4), carjacking, states: "did death result from the commission of this offense: YES"). No additional nexus or intent showing was required. Appellate counsel cannot be deemed ineffective for failing to raise this meritless argument. See Coley, 706 F.3d at 752.

**(D)    Bias**

Petitioner contends that counsel was ineffective for failing to argue that the Court should be disqualified from the case due to prejudice or bias, which deprived him of a fair trial. Petitioner

complains that the Court was biased against Petitioner, having presided over a 2006 criminal case where the Court "promise[d] to be bias[ed] in the future if he ever saw Mr. Hill again…." (Doc. No. 1 at 38). Petitioner further claims that the Court displayed had a preconceived notion of Petitioner's guilt (*i.e.*, by stating that Defendants tried to rob Hames and by depriving Petitioner of a self-defense theory); made adverse rulings on pretrial motions and during trial (*i.e.*, by prohibiting a self-defense theory and failing to excuse Juror 6); agreed with the Government's view of the case (*i.e.* that the case was a drug rip-off and that the shooting of Hames was execution-style); and by sentencing him beyond the statutory maximum for the § 922(g) count.

A federal judge is required to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge who presides at a trial is not recusable just because he becomes "exceedingly ill disposed towards the defendant" upon completion of the evidence because the "knowledge and the opinion it produced were properly and acquired in the course of the proceedings…." Liteky v. United States, 510 U.S. 540, 551 (1994). A favorable or unfavorable predisposition is characterized as prejudice or bias only if "it is so extreme as to display clear inability to render fair judgment." Id. "Also not subject to deprecatory characterizations of 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." Id. It is "normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." Id. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id.; Glenn v. Wells Fargo Bank, N.A., 710 F. App'x 574 (4th Cir. 2017).

First, Petitioner alleges that the Court was biased due to Petitioner's 2006 criminal case. The Court presided over case number 3:06-cr-188 in which Petitioner pleaded guilty to a single count of possession of a firearm by a convicted felon in violation of § 922(g). (3:06-cr-188, Doc.

No. 29). Petitioner contends that the Court threatened Petitioner in the 2006 case that he would be biased if he ever saw Petitioner again and that the prosecutor urged the Court to "remember" his threat to Petitioner and to "keep his word." (Doc. No. 1 at 38). Petitioner has not come forward with any transcript to support this contention. The records in the 2016 case and the revocation proceedings in the 2006 case reflect no such conversation. See (3:06-118, Doc. No. 106) (revocation and sentencing transcript); (CR Doc. No. 172) (sentencing transcript). The mere fact that the Court presided over a 2006 case then the 2016 case, and may have developed opinions about what it learned in those proceedings, does not amount to prejudice or bias. See Liteky, 510 U.S. at 551.

Petitioner has come forward with a number of allegedly biased decisions that the Court made pretrial, during trial, and at sentencing.[6] The record reflects nothing more than the parties and Court discussing various issues and the Court's rulings on those issues which were sometimes adverse to Petitioner. The Court has already addressed several of these matters in the preceding sections, *supra*, and the bias claim fails for the same reasons. See, e.g., United States v. Borodyonok, 286 F. App'x 97, 99–100 (4th Cir. 2008) (rejecting disqualification claim on plain error review because the jury instructions that allegedly demonstrated the court's impartiality were correct). To the extent that the Court made rulings adverse to the defense, these rulings fail to demonstrate prejudice or bias. See Liteky, 510 U.S. at 551; Glenn, 710 F. App'x at 574. To the extent that the Court expressed its own opinions and conclusions about what the evidence showed and the appropriateness of various arguments and evidence, such was required for the Court to preside over the case and make rulings. As the Supreme Court noted in Liteky, "[d]isinterestedness does not mean child-like innocence [and] [i]f the judge did not form judgements of the actors in

---

[6] All of the various examples Petitioner raises will not be addressed individually in the interest of judicial economy.

those court-house dramas called trials, he could never render decisions." 510 U.S. at 551 (quoting In re J.P. Linaham, Inc., 138 F.2d 650, 654 (2d Cir. 1943)). Moreover, the Court's comments could not have affected the jury so as to have deprived Petitioner of a fair trial to the extent that they occurred outside the jury's presence. See, e.g., (CR Doc. No. 166 at 244) (the Court stating side-bar, in ruling on an objection, that the shooting was "execution-style" and was "to get the dope").

Petitioner further contends that the Court disparaged the defense and defense counsel, which demonstrated prejudice or bias. The Court's rejection of various arguments by defense counsel and expression of impatience with such do not amount to prejudice and bias and could not have affected the jury to the extent that these comments occurred outside the jury's presence. See, e.g., (CR Doc. No. 166 at 164, 246) (reference to counsel's disorganization, that counsel objected was demeaning and reflected that the Court was not impartial, occurred outside the jury's presence). A reasonable person to question the Court's impartiality under these circumstances. See People Helpers Found., Inc. v. City of Richmond, Va., 12 F.3d 1321, 1325–26 (4th Cir. 1993) (judge's comments "while perhaps caustic" did not indicate personal bias where the judge merely voiced his perceptions concerning the case and the comments, "at worst, show [the judge's] disapproval of the actions taken [by the party], but they are not indicative of personal bias" and, in any event "these comments were not made during the trial on the merits or in the presence of the jury.").

Petitioner has failed to establish that appellate counsel performed unreasonably by failing to present meritless claims of judicial bias on direct appeal.  Nor has he shown a reasonable probability that such a claim would have prevailed had appellate counsel raised it.

**(E)      Inconsistent Verdict**

Petitioner contends that counsel should have argued on direct appeal that the verdict was fundamentally inconsistent. He argues that the jury's findings that Petitioner was guilty of Counts (3), (4) and (8), that death resulted from Counts (3) and (4), but finding in Count (7) that Petitioner did not discharge a firearm are inconsistent. (CR Doc. No. 92 at 1-2). Petitioner contends that, as a result of this inconsistency, he was erroneously adjudicated guilty for Counts (3), (4) and (8) and sentenced with the § 2A1.1 cross-reference.

Inconsistent jury verdicts "do not call into question the validity or legitimacy of the resulting guilty verdicts." United States v. Green, 599 F.3d 360, 369 (4th Cir. 2010) (quoting United States v. Powell, 469 U.S. 57, 64 (1984)); see Dunn v. United States, 284 U.S. 390 (1932) (a jury verdict of guilty on one count is not rendered void by the same jury's acquittal on a second count although the identical evidence logically supported convictions on both counts). A jury may arrive at an inconsistent verdict "through mistake, compromise, or lenity, and a jury could just as likely err in acquitting as in convicting." United States v. Louthian, 756 F.3d 295, 305 (4th Cir. 2014). Nothing in the Constitution requires a new trial where an inconsistent verdict has been returned. Powell, 469 U.S. at 65.

Trial counsel argued that the verdict is fundamentally inconsistent because the instructions on Counts (4) and (8), and the jury's finding that Petitioner did not discharge a firearm "[a]nd if they found him not guilty of discharging the firearm, then he could not have aided and abetted in any of the events that occurred in the car." (CR Doc. No. 172 at 32). The Court noted that the objection was preserved for the record and rejected the objection because "an inconsistent verdict is permissible under the law." (CR Doc. No. 172 at 32-33). The Court noted at trial, "the jury[] … decided he wasn't the shooter, so they didn't hold him responsible for actual discharging, but they

understood that all of this course of conduct involved all these other offenses, and they found those other offenses." (CR Doc. No. 172 at 36).

There was nothing inherently contradictory about the guilty verdicts in Counts (3) and (4) for kidnapping and carjacking that resulted in death; the guilt verdict in Count (7) to brandishing or discharging a firearm during and in relation to a crime of violence or drug trafficking crime in violation of § 924(c); and the guilty verdict in Count (8) to causing death in the course of using, carrying and possessing a firearm during and in relation to a crime of violence or drug trafficking crime in violation of § 924(j) with a special finding in Count (8) that Petitioner did not discharge a firearm. See, e.g., United States v. Toliver, 793 F. App'x 151 (4th Cir. 2010) (jury rationally could have found that defendant aided and abetted in an assault with a deadly weapon in furtherance of racketeering without having possessed or aided in the possession of any firearm); United States v. Blankenship, 707 F.2d 807 (4th Cir. 1983) (verdict finding defendant guilty of conspiracy to commit bank robbery and possession of stolen bank funds, but not guilty of armed robbery, assault on bank employees, and possession of firearms in the bank, was not fatally inconsistent); United States v. Lake, 972 F.Supp. 328 (D.V.I. July 7, 1997) (the jury's finding of guilt for carrying a firearm in relation to the commission of a carjacking under § 924(c) was not inconsistent with its acquittal of defendant of carjacking). Nor does the special finding that Petitioner did not discharge the firearm in Count (8) undermine the § 924(c) and § 924(j) convictions in Counts (7) and (8) in any way. See, e.g., United States v. Caraballo, 2014 WL 3535347 (D. Vt. March 6, 2014) (jury findings that defendant violated § 924(c) and § 924(j) in victim's shooting death, but that defendant did not discharge the firearm, were not inconsistent), on reconsid., 2014 WL 3535348, aff'd, 658 F. App'x 595 (2d Cir. 2016).

27

Appellate counsel cannot be deemed deficient for declining to raise this meritless claim on direct appeal and, had counsel raised it, there is no reasonable probability that it would have succeeded.

**(F)  Cumulative Error**

Finally, Petitioner contends that appellate counsel was ineffective for failing to raise cumulative error on direct appeal. Petitioner argues that the prejudice from the unadmitted photograph and failure to replace Juror 6, denial of him motion for judgment of acquittal on the carjacking, prosecutorial misconduct, failure to warn Petitioner of the mandatory life sentence, and the inconsistent verdict cumulatively deprived him of a fair trial.

Pursuant to the cumulative error doctrine, the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. United States v. Martinez, 277 F.3d 517, 532 (4th Cir. 2002). When "none of [the] individual rulings work[ ] any cognizable harm, ... [i]t necessarily follows that the cumulative error doctrine finds no foothold." United States v. Sampson, 486 F.3d 13, 51 (2007). In the context of cumulative error with regards to ineffective assistance of counsel claims, such claims must be reviewed individually rather than collectively. Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998).

None of the individual errors that Petitioner has identified are meritorious as discussed in the preceding sections. Therefore, his claim of cumulative error likewise fails.

In sum, Petitioner has failed to demonstrate that appellate counsel performed ineffectively by pursuing stronger arguments on appeal than the meritless claims he has identified. See generally Mason, 774 F.3d at 829 (counsel was not ineffective for failing to present a "long shot" equal protection argument on appeal and instead presented a stronger Fourth Amendment claim). His ineffective assistance of appellate counsel claims will therefore be denied.

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1.      The Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc.

No. 1), is **DENIED**.

2.      **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of

appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338

(2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims

debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive

procedural ruling is debatable and that the petition states a debatable claim of the

denial of a constitutional right).

3.      The Clerk is instructed to close this case.

Signed: December 11, 2020

Frank D. Whitney
United States District Judge

29